## 38775. STEWART v. BRIDGES et al.

HILL, Presiding Justice.

The defendant, Stewart, appeals from a permanent injunction against his use, for irrigation, of the waters of a lake abutting his property. The trial court imposed the injunction following a jury verdict in favor of plaintiffs, about half of the neighboring landowners whose property also abuts the lake (referred to as "the neighbors"). Stewart is seeking a judgment notwithstanding the verdict or new trial.

Two men purchased a 400-acre tract in an agricultural area in southeastern Screven County on which they proposed to build a 112-acre lake. They had the property surveyed and subdivided it into 21 unequal parcels, ranging from 2 to 17 acres, with two larger tracts of 46 and 114 acres each.

Stewart and the neighbors (or their predecessors) purchased lots at auction before Eureka Lake was formed by the damming of a stream. A portion of each tract became part of the lake bed when the lake was formed. Approximately half of Stewart's 46-acre lake tract is now under water. Stewart's lake tract is contiguous with a previously acquired tract farmed by him and upon which the irrigation enjoined below occurred. Stewart purchased the lake tract to have access to the waters of Eureka Lake for irrigating the tract he farms.

The neighbors brought this action seeking an injunction against Stewart's irrigation on the basis that such use is incompatible with their recreational use of the lake. The neighbors claimed Stewart's irrigation unreasonably lowered the level of water in the lake thus making fishing, swimming and boating impossible.[1]

Stewart's evidence showed that the lake continued to rise during the period of his irrigation and that the lake was almost full at the time of trial.[2]

This case does not involve a planned community or recreational development with recorded rights to and restrictions on

---

[1] The neighbors also urge that irrigation by use of a diesel engine is noisy; that if they fertilize the lake to provide food for the fish, irrigation will cause a loss of their fertilizer; and that if irrigation is permitted they cannot poison the lily pads without poisoning Stewart's crops.

[2] Stewart was permitted to irrigate during the summer of 1981 by the trial court's periodic suspension of its temporary injunction.

the use of the lake. That is to say, the common law, as opposed to contract law, is applicable here.

A state's water rights law applicable to non-navigable streams and watercourses is also applicable to lakes fed by such streams, Florio v. State, (Fla. App.) 119 S2d 305, 310 (1960), and Harris v. Brooks, 225 Ark. 436 (283 SW2d 129, 132-133) (1955), except that owners of land abutting a stream own to the thread of the stream, *Hendrick v. Cook,* 4 Ga. 241 (1) (1848), and at least in Eureka Lake, the littoral owners own the lake bed as described in their deeds.[3] Also, owners of land abutting a lake have rights similar to a downstream riparian owner even though their land may be "upstream."

Georgia's water rights law is based on the natural flow theory of the riparian rights doctrine modified by a reasonable use provision. *Pyle v. Gilbert,* 245 Ga. 403, 406 (265 SE2d 584) (1980). Under this theory every riparian owner is entitled to a reasonable use of the water and to have the stream pass over his land according to its natural flow subject to the reasonable use of the water by other riparian owners. *Price v. High Shoals Mfg. Co.,* 132 Ga. 246, 248-249 (64 SE 87) (1909); Agnor, Riparian Rights in Georgia, 18 Ga. B. J. 401, 403-404 (1956). In *Pyle v. Gilbert,* supra, this court found that a riparian owner could use the water of a stream on nonriparian land.

The trial court charged the jury that if it found Stewart and the neighbors entitled to simultaneous possession of the waters of Eureka Lake, this would create a tenancy in common between the parties as to the waters and Stewart would not be entitled to a superior right of possession and use of the waters to the exclusion of the neighbors. It also charged on the theory of vertical ownership: "I further charge you that the right of an owner of land extends upward and downward indefinitely. In this connection, I charge you that if you find that plaintiffs and defendant are the owners of the lake bed of Eureka Lake, then each owner is entitled to possession and control of the lake water immediately above his or her property, and that such proprietary right in said waters precludes the defendant, Dannie Lee Stewart, from appropriating said waters for irrigation purposes to the exclusion of plaintiffs' right to the use of said waters."

Stewart objected to the charge on the grounds that the charges on tenancy in common and vertical ownership are inappropriate and confusing in a case involving the doctrine of riparian rights. We agree with Stewart. The waters of the lake are not held subject to a tenancy

---

[3] See *Boardman v. Scott,* 102 Ga. 404 (1) (30 SE 982) (1897), regarding lake bed ownership where the deeds describe the adjoining tracts as being "bounded" by the lake. See also Kates, Georgia Water Law, Ch. VI (1969).

in common but are the subject of riparian rights. More importantly, ownership of a stream or lake bed does not entitle the owner to exclusive possession of the waters immediately above that property. A proper determination of the conflicting interests in this case is governed by the laws relating to riparian rights rather than a property owner's right to lateral support. We therefore vacate the permanent injunction against Stewart and remand the case for a new trial consistent with the foregoing decision. Because the case is to be retried, we will not undertake to decide whether there is irreconcilable conflict between recreational and agricultural use of the lake.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 30, 1982.

*W. T. Millican III,* for appellant.
*Harry H. Hunter,* for appellees.